Metcalf, J.
A complaint, on oath, was made to the police court of Boston, on the 29th of March, 1849, stating that the complainant had reasonable cause to suspect and did suspect, that lottery tickets, intended for sale, were concealed in the rooms, Nos. 12, 13, and 14, in Niles’s building, in Change avenue, and praying for a warrant to search there for the same. A warrant was thereupon issued, directed to the sheriff of Suffolk, his deputies, and the constables and police officers of Boston, commanding them to enter said rooms, in the day time, and there to search for said lottery tickets, and, if any of them should there be found, to bring them, together with the body of the person, in whose possession found, before said court. This warrant was served on the 13th of April, 1849, and numerous lottery tickets were found in said *370 rooms, and were taken and carried away by the officer ; and the bodies of Cyrus T. Francis and Alphonso Walker, in whose possession the tickets were found, were earned before said court, together with a schedule of said tickets.
Afterwards, said Francis was indicted in the municipal court, and convicted, on his own confession, (nolo contendere,) of the crime of knowingly having in his possession, with intent to offer to sell, and to sell, a large quantity of lottery tickets, and was sentenced to pay a fine of one thousand dollars, and costs of prosecution, with which sentence he complied.
The attorney for the commonwealth then filed an information and motion, praying the municipal court, after notice given to persons claiming said tickets, to order the same to be destroyed by the sheriff. Notice was given to the claimants, and they came in and resisted the motion, on the ground that the tickets had not been lawfully seized. But the court “ ruled that said tickets were lawfully seized, and had been lawfully detained hitherto in court, and that the same were liable to be destroyed; and ordered the same to be burned by the sheriff of the county of Suffolk.” To this ruling and order the claimants alleged exceptions; and the case is before this court on these exceptions.
The bill of rights declares that every subject has a right to be secure from all unreasonable searches and seizures of his person and papers, and that “ no warrant ought to be issued but in cases, and with the formalities prescribed by the laws that is, the common law, in cases within that law, and the statute law, in other cases.
The whole authority to issue a warrant to search for lottery tickets, and to destroy them after they have been used as evidence on the trial of a party, is derived from the Rev. Sts. c. 142. No such authority exists at common law. The great question, in this case, therefore is, whether the tickets, which are the subject of this motion, were lawfully seized by virtue of this statute. If they were, they may lawfully be destroyed; otherwise, not.
The first section provides, that “ when complaint shall be *371 made, on oath, to any magistrate authorized to issue warrants in criminal cases, that personal property has been stolen or embezzled, or obtained by false tokens or pretences, and that the complainant believes that it is concealed in any particular house or place, the magistrate, if he be satisfied that there is reasonable cause for such belief, shall issue a warrant to search for such property.” By § 2, “ any such magistrate may also, upon like complaint, made on oath, issue search-warrants, when satisfied that there is reasonable cause,” to search for counterfeit coin, forged bank-notes, &c., and tools, machines, or materials, prepared or provided for making either of them. This provision is a reenactment of St. 1823, c. 40, § 1, which first authorized the issuing of a warrant to search for these things ; and in that statute no form of complaint or warrant was prescribed. Of course, the common-law form, adopted in the case of stolen goods, would doubtless have been proper and legal. And such a form was set forth in D. Davis’s Justice, 217, immediately after that statute was passed.
The same § 2 of c. 142 also authorizes the issuing of a warrant, upon like complaint, to search for obscene books, pamphlets, prints, &c.; lottery tickets, or materials, made, provided or procured, for the purpose of drawing a lottery ; and gaming apparatus and implements.
By § 5 of the same chapter, “ When any officer, in the execution of a search-warrant, shall find any stolen or embezzled property, or shall seize any of the other things, for which search is allowed by the provisions” (above recited) “ of this chapter, all the property and things, so seized, shall be safely kept, by the direction of the court or magistrate, so long as shall be necessary, for the purpose of being produced or used as evidence on any trial; and, as soon as may be afterwards, all such stolen and embezzled property shall be restored to the owner thereof, and all the other things, seized by virtue of such warrants, shall be burnt or otherwise destroyed, under the direction of the court or magistrate.”
We understand the provision, in this section, for the destruction of lottery tickets, seized “ in the execution of a search-warrant,” to extend only to tickets lawfully seized. Any *372 other construction would require the burning of tickets seized on a warrant issued without any oath, and tickets seized in the unlawful execution of a warrant lawfully issued.
Was then the warrant in this case lawfully issued, on the complainant’s oath that he had reasonable cause to suspect, and did suspect, that lottery tickets, intended for sale, were concealed in the rooms mentioned in the complaint ? This is undoubtedly the usual and legal form, at common law, of complaints on which warrants are issued to search for stolen goods. 2 Hale P. C. 150; 3 Williams’s Justice, 863; Archb. on Commitments and Convictions, 41; D. Davis’s Justice, 215. And by Rev. Sts. c. 50, § 19, reenacting St. 1834, c. 172, magistrates are required, upon the oath of any person “ that he suspects, or has reasonable cause to suspect,” that any building is unlawfully used as a common gaming-house, to issue a warrant, commanding an officer to enter such building, and arrest all persons who shall be there found playing for money, or otherwise, and also the keepers of the same. Whe ther the Rev. Sts. c. 142, have rendered that form of oath illegal, in the cases of stolen goods and counterfeit money and instruments, and require that the complainant shall make oath to his belief, instead of his suspicion, or have merely authorized him to swear to his belief, leaving the old form valid ; in other words, whether the statute is merely cumulative, in those two cases; is a question which need not now be decided. In Stone v. Dana, 5 Met. 98, a warrant to search for stolen goods was issued, after the revised statutes went into operation, upon a complaint, sworn to in the old form; and though various objections were taken to the warrant, no question was made as to the sufficiency and legality of the complaint. As the point was not raised, it was not adjudged.
But now as to lottery tickets, which the Rev. Sts. c. 142, first made liable to seizure on a search-warrant, we are of opinion that they cannot lawfully be seized, except on a warrant issued .upon a complaint in which the complainant makes oath, in the words of that chapter, that he “ believes ” that they are concealed in some particular place specified. That chapter, § 1, as we have seen, authorizes a warrant, to search for stolen *373 property, to be issued, when the complainant swears that he “ believes ” that it is concealed, &c., if the magistrate is satisfied that there is reasonable cause for such “ belief.” And § 2 authorizes a magistrate, “ upon like complaint,” (that is, a complaint, on oath, that the complainant “ believes ” that lottery tickets are concealed in a particular place,) to issue a search-warrant, when satisfied that there is reasonable cause. The oath to the complainant’s belief, and not to his suspicion, is one of “ the formalities prescribed by the laws,” without which “ no warrant ought to be issued.”
It was suggested, in argument, that the legislature did not intend to alter the form of the complaint, and that the commissioners did not intimate such intention. But the commissioners and the legislature meant to alter the law as to the subjects of a search-warrant. To stolen goods and counterfeit money, &e., for which alone such a warrant could previously be issued, they added goods obtained by false tokens or pretences, obscene books and prints, gaming apparatus and implements, and lottery tickets. And in order to authorize the issuing of a warrant to search for and seize these new subjects of seizure, they required a sworn complaint, averring the complainant’s belief of the matter contained in it. The warrant is authorized on no other terms, and the court cannot sustain it on any other terms. It is immaterial whether the legislature alter the law intentionally or unintentionally. Unintentional alterations, that is, alterations not foreseen, and therefore not designed, are often made. Such oversights must be corrected, if at all, by the body that makes them, and not by the courts.
It was further suggested, in argument, that the word “ believe,” when applied to the subject-matter of c. 142, (to wit, the issuing of search-warrants,) should be construed to have the same meaning as “ suspect.” But it is an established rule, adopted and confirmed by the Rev. Sts. c. 2, § 6, that in the construction of statutes, all words and phrases, not technical, shall be construed and understood, according to the common and approved usage of the language. The words u suspect,” and “ believe ” are not technical words, and have *374 not, by the approved usage of the language, the same meaning. In Smith v. Boucher, Rep. Temp. Hardw. 62, 69; Ridgeway, 4, 126, and 2 Stra. 993; the defendant pleaded to a declaration, in an action for false imprisonment, that the university of Oxford had power to hold a court before the chancellor, See., for the trial of personal actions in which any of the parties was of the university ; that by a custom, confirmed by charter, if a plaintiff made oath that he believed the defendant would not appear, but would run away, the judge might issue a warrant to arrest him ; that the defendant was of the university, &c., and made oath that “ he suspected the plaintiff would run away,” whereupon a warrant was issued, and the plaintiff was arrested and detained in prison. On demurrer, the plea was held to be bad. Lord Hardwicke said, “ the plaintiff” [in the first action] “ does not, according to custom set out, swear he believes the defendant was about to withdraw, but only that he suspects it; and if an affidavit should be read in this court, wherein a man swears he suspects something, we should not take it to be equally strong as where he swears he believes it.” “ Suspecting is not believing.” “ That may be a ground for suspicion, which will not induce belief.”
The last suggestion, made at the argument, in support of the order of the municipal court, was this : As it was'held, in Commonwealth v. Dana, 2 Met. 337, that lottery tickets, though unlawfully seized, were nevertheless admissible in evidence against the defendant, on the trial of an indictment charging him with having them in possession ; the court might also order, them to be destroyed. Rut the power to destroy tickets is given only on the terms prescribed by statute; whereas the rules of evidence, on the trial of an indictment for having them unlawfully in possession, are prescribed by the *. ummon law. And by that law, the court do not take notice of the manner in which papers offered in evidence are obtained. If they are pertinent to the issue, they are admissible. Stockfleth v. De Tastet, 4 Campb. 10; Caddy v. Barlow, 1 Man. & Ryl. 275; Robson v. Alexander, 1 Moore & Payne, 448, 452; 1 Greenl. on Ev. (3d ed.) § 254 a.
For the foregoing reasons, we are of opinion that the ruling *375 and order of the municipal court were wrong, and that the order, directing that the tickets be burnt, must be reversed, and the case sent back to that court.
It is not to be inferred, from this decision, that when a party is convicted on an indictment for having counterfeit banknotes or coins, or obscene books or prints, the court cannot order them to be destroyed or impounded, though they may have been seized on a warrant unlawfully issued or executed. The authority to destroy or impound, in those cases, may be incident to the conviction. But lottery tickets are not mala in se, in any legal sense, and courts, as already stated, have no authority to regulate the disposition of them, besides that which is conferred by statute.